[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
The defendant-appellant, Eric R. Tepe, appeals from his convictions for aggravated vehicular homicide, tampering with evidence, and failure to stop after an accident, violations of R.C. 2903.06, 2921.12, and 4549.02, respectively. The convictions arose from an incident in which Tepe, operating a Ford van, ran into the rear of a motorcycle that was stopped under an overpass during a rainstorm. The motorcycle's driver, Frank Volski, was sitting on the vehicle at the time of the collision and suffered fatal injuries when he was ejected from his seat.
Tepe's driving privileges were suspended at the time of the incident, and he was, in fact, on probation for driving under suspension. He was also on probation in Indiana for driving while under the influence of alcohol. After striking the motorcycle, Tepe stopped the van, saw the motorcycle caught under the front bumper, and then removed the license plate from the van and fled from the scene on foot. Tepe later told police that he had been drinking beer at dinner and had fled out of a sense of panic.
In his first assignment of error, Tepe argues that the trial court erred by not granting his Crim.R. 29 motion for acquittal. Specifically, he asserts that his conviction for aggravated vehicular homicide was based upon insufficient evidence and contrary to the weight of the evidence.[1] Central to this argument is Tepe's contention, advanced at trial and supported by the opinion of an accident-reconstruction expert, that the collision occurred not on the berm, but in a legal lane of travel as Volski was driving his motorcycle at approximately thirty-five miles per hour. Under Tepe's version of events, the collision was either an accident, for which he bore no criminal responsibility, or an act of vehicular homicide based upon negligence (as opposed to aggravated vehicular homicide based upon recklessness).
At trial, the state disputed Tepe's version of events based upon the location of the physical evidence. Volski's body, blood, helmet, sunglasses, and motorcycle, as well as the blood, tire, and skid marks (what the state refers to as the "debris trail"), were all found on the berm. No accident-related debris was found in the roadway. Additionally, the state pointed to the fact that the motorcycle was caught on the front bumper of the van, indicating that it had not been sideswiped. Further, and perhaps most damaging, the ignition of the motorcycle was in the off-position, strongly refuting any suggestion that the motorcycle had been in operation at the moment of impact.
Although Tepe argues that the jury should have accepted the testimony of his accident-reconstruction expert, the testimony was difficult to reconcile with the physical evidence. Certainly there was reason to doubt the expert's conclusions based upon his failure to persuasively explain the location of the "debris trail" and the ignition of the motorcycle being in the off position. The jury, as fact finder, was entitled to reject the expert's testimony, and, in doing so, we cannot say that the jury lost its way or committed a manifest miscarriage of justice. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
In his second assignment of error, Tepe argues that the trial court erred by rejecting his request to have the jury instructed on the defense of "accident," as well as on the legal meaning of the concentration of alcohol (.061) found in Volski's blood upon autopsy. With respect to the latter, Tepe requested an instruction that would have informed the jurors that Volski could still have been driving while impaired even though the concentration of alcohol found in his body was below the legal limit.
With regard to the proposed accident instruction, we agree with the state that the failure to give this instruction presented only the possibility of harmless error, since the jury, which was instructed on both vehicular and aggravated vehicular homicide, rejected the lesser offense and found that Tepe had acted recklessly. The jury's finding that Tepe's conduct was reckless, rather than negligent, precluded any possibility that it would have found that the collision was a mere accident. Therefore, even if we were to assume that the trial court should have given the instruction, any error in not doing so would have been harmless as a matter of law.
As for the requested instruction concerning the meaning of the level of alcohol found in Volski's bloodstream, we agree with the state that the evidence did not justify such an instruction. The deputy coroner testified that the level was below the legal limit, and Tepe's counsel was allowed to cross-examine on this point. Any further exploration of this subject would have been superfluous and potentially confusing.
In his third assignment of error, Tepe argues that the trial court erred by refusing to allow the admission of two proffered exhibits: a listing of the number of times his accident-reconstruction expert had been deposed as an expert witness, and a listing of the number of times he had actually testified at trial. Although the trial court refused admission of these two exhibits, the court did allow into evidence both the expert's resume and his written report. Additionally, the expert testified at length concerning his resume and qualifications, as well as the number of cases in which he had been involved.
Generally, the admission or exclusion of evidence rests within the discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. Given the largely cumulative nature of the exhibits, and the abundant opportunity granted Tepe to accredit his expert, we hold that the trial court did not abuse its discretion by limiting the evidence as it did.
In his fourth assignment of error, Tepe argues that the trial court's sentence of seven years on the charge of felonious assault, three years on the charge of tampering with evidence, and one year on the charge of failure to stop after an accident was "violative of the court's responsibilities under Ohio's Senate Bill II sentencing guidelines."
Initially we note that Tepe only received the maximum sentence on the failure-to-stop charge. We agree with the trial court that this was the worst form of the offense. The trial court made all the necessary findings, and Tepe does not argue to the contrary. Although Tepe challenges some of the findings, we hold that they are all supported by the evidence.
In his fifth assignment of error, Tepe argues that the trial court erred by admitting certain photographs of Volski's body into evidence given their potential to inflame the jury. Because of the relevance of the location of the physical evidence, we hold that the trial court did not abuse its discretion by allowing the photographs to be admitted, notwithstanding their gruesome nature or Tepe's proffered stipulations. See State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768; State v.Morales (1987), 32 Ohio St.3d 252, 513 N.E.2d 267.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
GORMAN, P.J., SUNDERMANN and SHANNON, JJ.
[1] Tepe concedes that the other two charges were "never vigorously contested."